## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**JUDY CARMEN MULKEY**,

     **Plaintiff,**

v.                                                **Case No. 1:11-cv-370 MCA/WDS**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

     **Defendant.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** comes before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing. [Doc. 20.] This is the second time Plaintiff's disability claim has been appealed to the district court. On November 5, 2009, Magistrate Judge Robert Hayes Scott granted Plaintiff's first motion to remand the case to the Commissioner of Social Security for additional administrative proceedings.[2] Per Judge Scott's order the Commissioner conducted the additional proceedings, including a supplemental hearing. The Commissioner again denied benefits. Plaintiff now seeks judicial review of the Commissioner's second decision that Plaintiff is not disabled. Having considered Plaintiff's motion [Doc. 20], Defendant's response [Doc. 22], and Plaintiff's Reply [Doc. 23], the administrative record and applicable law, the Court recommends Plaintiff's motion be DENIED.

---

[1] Within fourteen (14) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the fourteen-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

[2] *Mulkey v. Astrue*, 1:08-cv-1039 RHS, Doc. 20.

## I.  Background

Plaintiff was born July 23, 1959.  Tr. 51.  She completed two years of college.  Tr. 115. From approximately 1990 to 1998, Plaintiff worked as a registered nurse.  Tr. 60.  Since then she has worked at times as a grocery store cashier, a sales associate at Bed, Bath and Beyond, a cashier and floor clerk at K-Mart, and as a seamstress.  Tr. 59, 60.  Most recently, as of the supplemental hearing in December 2010, Plaintiff was attending school full time pursuing a degree in hospitality management and working as a part-time data entry person at the Job Connection Center at the community college.  Tr. 526, 529–30.

Plaintiff applied for disability insurance benefits and supplemental security income in April 2005.  Tr. 54.  She alleged disability due to depression, anxiety, alcohol dependence, and hypertension with an onset date of December 24, 2004.  Tr. 43, 51.  Plaintiff's applications were denied initially on July 25, 2005, and on reconsideration in October 2005.  Tr. 38–40, 43–46, 213–15.  Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  Tr. 36.  The hearing was held October 25, 2007, before ALJ George Reyes; Plaintiff was represented and testified at the hearing.  Tr. 265–66.  A vocational expert did not testify.

On February 29, 2008, ALJ Reyes issued a decision finding Plaintiff was not disabled.  Tr. 8–18.  Plaintiff filed a request for review with the Appeals Council.  Tr. 7.  The Appeals Council denied the request for review.  Tr. 3–5.  Plaintiff sought review in district court and obtained a remand.  *See generally Mulkey v. Astrue*, 1:08-cv-1039 RHS.

In his Memorandum Opinion and Order remanding the case to the Commissioner, Judge Scott concluded ALJ Reyes had erred by relying conclusively on the grids to reach a finding of nondisability without obtaining vocational expert testimony.  Without dictating any particular result upon remand, he directed the Commissioner to "consider whether a vocational expert should be

2

utilized in light of the severe nonexertional impairments"and to "properly identify whether he relies on the grids as a framework or if he conclusively relies on the grids." *Mulkey v. Astrue*, 1:08-cv-1039 RHS, Doc. 20 at 21.

Upon remand, a different ALJ, Ann Farris, conducted a supplemental hearing and utilized the testimony of a vocational expert. Tr. 305. The hearing was conducted on December 9, 2010. Plaintiff testified and was represented by counsel. ALJ Farris issued her decision denying benefits on January 19, 2011. Tr. 305–13. The Appeals Council declined to assume jurisdiction of Plaintiff's request for review, Tr. 292–301, thus rendering ALJ Farris's decision the final decision of the Commissioner from which Plaintiff now appeals pursuant to 42 U.S.C. § 405(g).

## II. Legal Standards

This Court may only review the Commissioner's decision to determine whether it is supported by substantial evidence and whether correct legal standards were applied. *Langley v. Barnhart,* 373 F.3d 1116, 1118 (10th Cir. 2004). The substantial evidence standard requires more than a scintilla, but less than a preponderance of evidence. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). In determining whether the Commissioner's findings are supported by substantial evidence, the Court should not re-weigh the evidence nor should it substitute its judgment for that of the Commissioner. *Id.* Instead, the Court should meticulously examine the record to determine whether the Commissioner's decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988) (quotation marks and citation omitted).

A sequential five-step analysis applies in determining whether an adult claimant is disabled and entitled to benefits under the Social Security Act. *See Williams,* 844 F.2d at 750–52; 20 C.F.R. §§ 404.1520, 416.920. First, the question is whether the claimant is engaged in substantial gainful

3

activity. *Williams,* 844 F.2d at 750. If so, the claimant is not disabled; if not, the analysis proceeds to step two. *Id.* At the second step, the question is whether the claimant has an impairment or combination of impairments that is severe. *Id.* at 750–51. If not, the claimant is not disabled; however, if the claimant makes the required showing of severity, the analysis proceeds to step three. *Id.* at 751. At step three, the question is whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed at Appendix 1, Subpart P, of 20 C.F.R. Part 404 ("Listings" or "Listed Impairment"). *Id.* If so, the impairment is considered to be presumptively disabling. *Id.* If not, the analysis proceeds to step four, where the question is whether the impairment prevents the claimant from doing past work. *Id.*

The claimant is not disabled if he or she can perform past work. *Williams*, 844 F.2d at 751. If the claimant cannot perform past work, the analysis proceeds to step five, where the burden shifts to the Commissioner to establish that the claimant has the residual functional capacity (RFC) "to perform other work in the national economy in view of his age, education and work experience." *Id.* (quoting *Bowen v. Yuckert,* 482 U.S. 137, 142 (1987)). The claimant is entitled to benefits unless the Commissioner establishes that the claimant can "perform an alternative work activity and that this specific type of job exists in the national economy." *Id.* (quoting *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984)).

### III. Summary of ALJ's Decision Upon Remand and Plaintiff's allegations of error

At step one, ALJ Farris found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 24, 2004. Tr. 307. Although Plaintiff has worked at various jobs since then, and was employed at the time of the hearing, ALJ Farris found her earnings "were just under the substantial gainful activity amount of $940 per month." Tr. 307.

At step two, ALJ Farris found Plaintiff has the following severe impairments: posttraumatic

4

stress disorder (PTSD), depression, and a history of alcohol dependence. Tr. 308. At step three, ALJ Farris found that Plaintiff did not have an impairment or combination of impairments that meets or equals the severity of a listed impairment. Tr. 308. In reaching this conclusion, ALJ Farris determined that Plaintiff has mild restrictions in the activities of daily living, and moderate difficulties in social functioning and in concentration, persistence or pace. Tr. 308. Plaintiff has no exertional impairments.

At step four, ALJ Farris found Plaintiff has the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: that claimant can perform simple and some detailed work activity but no complex work task; that claimant should not work in a public environment and should have only a superficial contact with coworkers." Tr. 309. Based on this RFC, ALJ Farris concluded Plaintiff could not perform any of her past relevant work "except for data entry clerk, which is a sedentary occupation." Tr. 311. ALJ Farris went on to find that Plaintiff had acquired transferrable skills from her past relevant work as a data entry clerk, sewing machine operator, delicatessen clerk, sales clerk, and nurse. Tr. 311. At step five, relying on a vocational expert, ALJ Farris concluded that considering Plaintiff's age, education, work experience, RFC, and acquired transferable skills, there are a significant number of jobs existing in the national economy that she can perform. Tr. 311–12. ALJ Farris accordingly reached the conclusion that Plaintiff is not disabled. Tr. 312.

Plaintiff alleges the following errors: (1) the ALJ failed to afford certain treating source opinions the weight to which they are legally entitled; (2) the ALJ failed to include all Plaintiff's moderate impairments in the RFC and in the hypothetical to the vocational expert; and (3) the ALJ's credibility determination is not supported by substantial evidence and is contrary to law.

**IV.  Discussion**

5

A.     **Whether the ALJ properly analyzed treating source opinions**

Plaintiff argues the ALJ failed to perform the required analysis of her treating "doctor" opinions.  [Doc. 20 at 4.]  The opinions Plaintiff refers to are the assessments of mental health counselor Regina Laselute and clinical supervisor Ken Wells that Plaintiff suffers from marked limitations and can only work part time.

These opinions are contained in a "Medical Source Statement of Ability to Do Work-Related Activities" that counselor Laselute completed in November 2007.  It states Plaintiff has marked limitations in:  (1) ability to carry out detailed instructions; (2) ability to make judgments on simple work-related decisions; and (3) responding appropriately to work pressures in a usual work setting. Tr. 261–63.  Counselor Laselute provided the following narrative:

> If client feels overwhelmed by work duties, [client] responds [with] severe anxiety.  [Client] becomes unable to concentrate on simple duties due to flight of thought ideas.
>
> [Client] has [diagnosis] of anxiety.  [Client] reports panic attacks [with] symptoms of hyperventilation, flight of thoughts [and] ideas, etc. increasing risk of relapse (alcohol)
>
> [Client] uses alcohol as a coping mechanism to increased anxiety - Therefore, exacerbating limitations caused by anxiety.  Limitations include inability to concentrate [and] carry out responsibilities of duties.  [Client's] ability to effectively communicate [with] supervisors [and] co-workers becomes impaired.  [Client's] ability to make appropriate decisions also becomes impaired as [client] presents [with] flight of thoughts.  As stated [client's] limitations are exacerbated by alcohol use.  However, limitations are present despite alcohol due to anxiety.

Tr. 261–63.

In January 2008, counselor Laselute completed a "Medical Source Statement Regarding Function, which was also signed by the clinical supervisor, Ken Wells, PhD.  Tr. 135–36. Laselute and Wells indicated marked limitations in (1) ability to understand, carry out, and remember simple instructions; (2) ability to make simple work-related judgments and decisions; and (3) respond appropriately to supervision, co-workers, and work situations.  The narrative states:  "When Judy

6

exceeds [half time] employment, her anxiety becomes severe, making her unable to concentrate, follow through [with] tasks, and maintain emotional/psychological balance." Tr. 135. "When anxiety is exacerbated, Judy has increased self-doubt, therefore avoids making decisions and being pro-active." Tr. 136. A Treatment Summary accompanying the statement reports that Plaintiff "has been advised to become more proactive in establishing a lifestyle that is more conducive to her mental health needs, for example, by creating boundaries with employers, friends, and family, as well as by limiting her work hours." Tr. 134.

An ALJ generally should give more weight to opinions from the claimant's treating sources. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); 20 C.F.R. § 404.1527(c)(2). "In deciding how much weight to give a treating source opinion regarding the nature and severity of impairments, an ALJ must first determine whether the opinion qualifies for 'controlling weight'." *Watkins*, 350 F.3d at 1300. The opinion is entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence[.]." 20 C.F.R. § 404.1527(c)(2). If the opinion is deficient in either of these two respects, it is not entitled to controlling weight. *Watkins*, 350 F.3d at 1300.

The ALJ did not give controlling weight to the opinions of Laselute and Wells[3] regarding Plaintiff's limitations. The ALJ expressly rejected the opinion that Plaintiff suffers from marked limitations and implicitly rejected the opinion that Plaintiff can only work 20 hours a week.

Plaintiff claims the ALJ's analysis does not comport with *Watkins*. She argues the analysis is "incomplete" because the ALJ's "sole treatment of the evidence from counselor Laselute and Dr. Wells is the statement that they are not supported by the evidence 'or the account given by the

---

[3]  Although Plaintiff refers to these treating sources at issues as "doctors," it appears that neither Laselute nor Wells is a physician.

claimant herself or her activities of daily living, as well [as] her engagement in school activities and work activities.'" [Doc. 23 at 1–2.]

The ALJ's analysis is more thorough than Plaintiff's argument suggests.   The ALJ stated that the notion that Plaintiff suffers with marked limitation of function

> is not supported by the evidence or the account given by the claimant herself of her activities of daily living, as well [as] her engagement in school activities and work activity.  If the claimant were suffering from the number of marked limitations [reported by Laselute and Wells], Claimant clearly would not have the ability to engage in full-time work activity or engage in educational programs of higher learning.  Therefore, I conclude that their opinions are not supported by the record evidence.

Tr. 311.

The ALJ's analysis of the treating source opinions of Laselute and Wells also is not "incomplete" as Plaintiff argues.  First, the ALJ gave a good reason for not assigning any weight to the opinions of Laselute and Wells that Plaintiff has marked limitations:  their opinions are not supported by the evidence.  Second, the ALJ discussed specific evidence inconsistent with marked limitations, including more recent evaluations by other treating sources, such as the February 2010 report of Plaintiff's attending physician, Dr. Bigney, that Plaintiff's depression was well-managed with a prescribed treatment regimen, that Plaintiff was not suffering from sleeplessness, changes in appetite, symptoms of disinterest or suicidal ideations, that she was working and simultaneously pursuing a degree in hotel management, and that she partakes in arts and crafts.  Tr. 310, 445. The ALJ noted that a counselor had recently evaluated Plaintiff with a global assessment function score of 60, which reflects successful coping skills and a well-managed condition. Tr. 310, 434.  The ALJ further observed that Plaintiff has a history of alcohol dependence and had in the past turned to excessive alcohol consumption as a means to cope with a 2004 assault, but there is no evidence that Plaintiff has continued with excessive alcohol consumption or that alcohol dependence prevents her

from attending school, working, or medical compliance.  Tr. 310.

Nor did the ALJ ignore evidence, as Plaintiff argues.  To the contrary, the ALJ acknowledged that the evidentiary record "document[s] the presence of depressive symptoms, anxiety symptoms, and physical ailments."  Tr. 310.  The ALJ found "[c]learly, claimant has been adversely affected by the mental impairments," but nevertheless concluded that Plaintiff "has not been disabled by [the mental impairments]."  Tr. 311.

Plaintiff also complains that instead of relying on Laselute and Wells, the ALJ attributed "great weight" to the opinion of Holly Blue-Sky-Rey, an intern at the Central New Mexico Community College Health Center who allegedly never saw Plaintiff after an initial intake evaluation in June 2010.  Plaintiff argues the ALJ's characterization of Ms. Blue-Sky-Rey's report as a "forthright history of successful treatment" is "conclusory."  [Doc. 20 at 10.]  Plaintiff points to evidence she claims supports Laselute's assessment of marked restrictions.  She notes that she suffered a psychiatric emergency in 2008, at which time she reported suicidal ideation, loss of energy, lack of interest, and difficulty at work when she was required to interact with clients and peers.  Tr. 483.  She also points to the report of Peter Taylor, D.O., who saw Plaintiff on three occasions in 2008 and 2009.  Dr. Taylor diagnosed Plaintiff with PTSD and alcohol dependence in remission, and assessed her with consecutively increasing GAF scores of 45, 50, and 55.  Tr. 466, 476, 479.

These arguments invite the Court to re-weigh evidence and to substitute its judgement for the ALJ's, contrary to the standard of review.  Furthermore, Plaintiff's argument that Laselute's opinion should be given greater weight than other sources overlooks the portions of Laselute's assessment that controvert Plaintiff's disability claim.  Laselute reported that Plaintiff suffers only slight restrictions interacting with supervisors and coworkers, and no restrictions interacting with

9

the public.  Tr. 262.  By assigning an RFC that eliminates any contact with the public and meaningful interactions with coworkers, the ALJ rejected not just the portions of Laselute's opinion that are favorable to Plaintiff's disability claim, but also the portions that are unfavorable and that contradict Plaintiff's own testimony that she has difficulties interacting with coworkers and the public.  Tr. 526, 531–32, 538.

Finally, while the ALJ's characterization of Ms. Blue-Sky-Rey's report is perhaps an oversimplification of Ms. Blue-Sky-Rey's evaluation, it nevertheless is a fairly accurate description of the record in general.  The record contains numerous records from various healthcare providers describing Plaintiff as doing "well" and her condition as "well managed."  Tr. 443, 445, 463, 466–67, 476–77, 500.  Plaintiff argues that these many comments must be "read in context" and that improvements were "short-lived."  However, after meticulously examining the record, including those portions Plaintiff claims must be "read in context," the Court concludes the ALJ did not err by rejecting the opinions of Laselute and Wells and that her decision is supported by substantial evidence.

**B.      Whether the ALJ omitted moderate limitations from the RFC finding**

Plaintiff argues the ALJ failed to incorporate Plaintiff's moderate limitations into the RFC and failed to discuss the effects of stress on her ability to function.  She argues that the ALJ's RFC limitation to simple, noncomplex tasks, with only superficial contact with coworkers does not adequately describe her functioning with respect to psychological impairments.  According to Plaintiff, because she has a marked limitation in her ability to respond to work pressure and in her ability to carry out simple instructions, she is limited to part-time work.  She states she feels less anxiety and is better able to manage other aspects of her life, such as grocery shopping, when she limits her work schedule to 20 hours a week.

The Court notes first, as discussed above, that the ALJ properly rejected opinion evidence that Plaintiff suffers from marked limitations. The ALJ did find that Plaintiff suffers from moderate limitations in (1) concentration, persistence or pace and (2) social functioning. The RFC accordingly states that Plaintiff is limited to "simple and some detailed work activity but no complex work tasks" and that she "should not work in a public environment and should have only a superficial contact with coworkers."

The Court concludes these restrictions adequately address the impairments Plaintiff claims the ALJ omitted. In determining the RFC, the ALJ is required to consider the combined impact of the impairments. *Groberg v. Astrue*, 415 F. App'x 65, 67 (10th Cir. 2011) (unpublished) (citing 20 C.F.R. §§ 404.1523, 404.1545(a)(2)). It seems clear from the record that Plaintiff's ability to concentrate is impaired by social interaction; Plaintiff herself links the two impairments. Tr. 189–90, 483, 513. Plaintiff testified that her primary difficulty with working and maintaining a schedule is dealing with other people. Tr. 530–32, 526, 537–39. By assigning an RFC that limits Plaintiff to working in a nonpublic environment with only superficial contact with coworkers, and on tasks that are not complex, the ALJ addressed the combined effect of both moderate impairments, as well the effects of stress on Plaintiff's ability to respond to work pressure. Furthermore, the ALJ included these limitations in the hypothetical to the vocational expert, Tr. 547, and Plaintiff does not claim any other deficiency in the hypothetical.

The cases Plaintiff cites deal with a different issue and are not applicable here. In both cases, the ALJ erred by accepting some of the moderate limitations found by a nonexamining physician but rejecting, without discussion, other moderate limitations found by the same physician. *Frantz v. Astrue*, 509 F.3d 1299, 1302–03 (10th Cir. 2007); *Haga v. Astrue*, 482 F.3d 1205, 1207 (10th Cir. 2007). Plaintiff's argument here is not that the ALJ failed to find limitations, but that she failed to

11

incorporate limitations found at step three into the RFC at step four.

In a footnote in *Frantz*, the Tenth Circuit directed the Commissioner to address an "inconsistency" similar to the inconsistency Plaintiff alleges here.  Namely, that the ALJ did not include the claimant's moderate difficulties in maintaining social functioning and in concentration, persistence or pace, found at step three, into the RFC determination at step four.  *Frantz*, 509 F.3d at 1303 n.3.

The Court cannot conclude from the footnote reference in *Frantz* that the ALJ's RFC determination in this case is inconsistent with the moderate limitations the ALJ found for this Plaintiff.  As Plaintiff states, the ALJ is required to make an individualized assessment of a disability claimant's reaction to the demands of work.  Regarding Plaintiff's moderate impairments, the ALJ found that Plaintiff at times attends school, work, Alcoholics Anonymous meetings, and shops when necessary; she sometimes stays in bed on the weekends.  Tr. 308.  Furthermore, although Plaintiff testified that she "pretty much stays in bed" on weekends, she also testified that on Saturdays she will "try to go do whatever I need to do" such as go to the computer lab to do homework.  Tr. 536. There is no evidence that Plaintiff  has adopted a "highly restricted and/or inflexible lifestyle" as Plaintiff appears to argue.  [Doc. 20 at 14.]  The Court finds no inconsistency between the RFC and Plaintiff's moderate impairments, and concludes that the RFC is supported by substantial evidence.

### C.      Whether the ALJ's erred in her credibility analysis

The ALJ found that Plaintiff had "failed to creditably [sic] establish the disabling effects of depression," that her depressive disorder was "being managed quite well," and that it did not pose an impediment to sustained work activity.  Tr. 310.  Plaintiff challenges the ALJ's credibility finding, arguing that the finding is not linked to substantial evidence.  The Court disagrees.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not

12

upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (citation and quotation marks omitted).  Nonetheless, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir.1988) (footnote omitted).  The process "does not require a formalistic factor-by-factor recitation of the evidence" but is satisfied if "the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility."  *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Plaintiff's argument, which primarily relies on her own testimony to establish credibility, does not convince the Court the ALJ erred in her credibility analysis.  First, much of the testimony Plaintiff cites in support of her credibility tends to support the ALJ's conclusion that she suffers only mild to moderate restrictions.  For example, although she claims she was forced to quit one job because of stress, that she cannot work full time because of the overwhelming stress of being at work, that she misses several days a month of work and school because it is hard to get out of bed, has problems sleeping and keeping up with household chores, and that she is planning to take fewer classes next semester because of difficulties keeping up with her schedule, she also claims she attends a weekly women's counseling group, grocery shops on her way home from school, handles a checking account, does arts and crafts, rides her bike, and goes to the farmers market in the summer.  [Doc. 20 at 16.]  Second, it is apparent from the restrictions included in the RFC that the ALJ credited Plaintiff's testimony that she has difficulties dealing with the public, over the opinion of counselor Laselute who reported that she has no such difficulties.

Furthermore, the ALJ's conclusion that treatment of Plaintiff's depression has been "availing and effective" is affirmatively linked to the report of treating doctors Jessica Bigney and Star Fowler.  Tr. 309–10.  In a report dated February 22, 2010, Dr. Fowler stated Plaintiff believed her

13

depression to be well-managed on a treatment regimen of therapy and medication.  Tr. 445.  Plaintiff also "denies insomnia, changes in appetite, disinterest, or suicidal or homicidal ideation."  Tr. 445.  Plaintiff was "working full time and going to school to obtain a degree in hospitality/hotel management" and coped with the stress of work and school by partaking of arts and crafts.  Tr. 445.

Plaintiff argues that the ALJ failed to discuss Plaintiff's reports of stress-related episodic diarrhea.  This argument mischaracterizes the medical evidence.  Drs. Fowler and Bigney did not conclude Plaintiff's episodic diarrhea was stress-related.  Dr. Fowler recommended testing for malabsorption, celiac disease, folate, and vitamin B12 levels, and she encouraged Plaintiff to keep a food diary and to consider adding soluble fiber to her diet.  Tr. 446.

Finally, citing *Jozefowicz v. Heckler*, Plaintiff argues that her testimony and her treating counselor's opinion establish there is not substantial evidence for the ALJ's statement that Plaintiff "does, in fact, have a residual functional capacity commensurate with the ability to perform sustained work functions, although the claimant is not earning substantial gainful amounts."  Tr. 307.

*Jozefowicz* is not applicable here.  In *Jozefowicz*, the Tenth Circuit concluded that evidence was lacking to support a finding of substantial gainful employment, because although the claimant had been attempting to work, her productivity and earnings were "so meager for the amount of time and energy expended as to call into serious question any finding that the employment is substantially gainful." *Jozefowicz v. Heckler*, 811 F.2d 1352, 1357 (10th Cir. 1987).  In this case, the question of whether Plaintiff's past work qualifies as substantial gainful activity is not at issue:  the ALJ concluded it does not.  Nevertheless, work Plaintiff performed while she allegedly was suffering impairments is evidence the ALJ may consider when determining disability and evaluating Plaintiff's credibility. *See Eden v. Barnhart*, 109 F. App'x 311, 315 (10th Cir. 2004).

14

Even though Plaintiff's earnings do not rise to the level of substantial gainful activity, the ALJ found that they were "quite significant." The ALJ further supported her conclusion by citing evidence that Plaintiff is not only working, but going to school to obtain a degree in hotel management. Tr. 310. The fact that Plaintiff's earnings fall short of the threshold to qualify as substantially gainful does not undermine the RFC or the finding of nondisability. Therefore, the Court concludes the ALJ did not err in her credibility analysis and that substantial evidence supports the credibility determination.

### V.  Conclusion

The Court recommends that Plaintiff's Motion to Reverse and Remand for a Rehearing [Doc. 20] be **DENIED.**

**W. DANIEL SCHNEIDER**
**UNITED STATES MAGISTRATE JUDGE**